UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| | § |
| v. | § CRIMINAL NO. 4:24-CR-657 |
| | § UNDER SEAL |
| OPHELIA EMEAKOROHA | § |
| | § |
| Defendant. | § |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas; and Drew Pennebaker, Trial Attorney, United States Department of Justice, Criminal Division, Fraud Section; and the Defendant, Ophelia Emeakoroha ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's agreement

1. Defendant agrees to plead guilty to Count 1 of the Information. Count 1 charges Defendant with Maintaining a Drug-Involved Premises for the Purpose of Unlawfully Distributing Hydrocodone and Other Controlled Substances, in violation of Title 21, United States Code, Section 856(a)(1). Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 21, United States Code, Section 856(a)(1) where, as here, the substance in issue falls within Schedule II, is a term of imprisonment of not more than 20 years, a fine not to exceed $500,000, or both. 21 U.S.C. § 856(b). Additionally, Defendant is subject to a civil penalty of not more than the greater of $250,000, or twice the gross receipts, either known or estimated, that were derived from the violation. 21 U.S.C. § 856(d). Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. 18 U.S.C. §§ 3559(a)(3) & 3582(b)(2). Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. *See* 18 U.S.C. §§ 3559(a)(3) & 3583(e)(3). Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

## Mandatory Special Assessment

3.  Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.  Defendant recognizes that pleading guilty may have consequences with respect to her immigration status. Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied

2

admission to the United States in the future. Defendant understands that if she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Exclusion from Federal Health Care Programs and Stipulation Regarding Drug Enforcement Administration Registration Number

5. Defendant understands and acknowledges that as a result of this plea, Defendant will be excluded from participating in all federal health care programs, including the Medicare and Medicaid Programs. Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within sixty days of receiving the documents. This exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

6. Defendant further stipulates and agrees as part of this plea that, both now and at all times in the future, her acquisition, possession, or control of a DEA Registration Number would constitute an imminent danger to the public health and safety. Defendant understands and acknowledges that the effect of this stipulation is that she will never again be able to own or operate an entity involved in distributing or dispensing controlled substances of any kind, and she agrees that result is necessary to protect the public.

3

## Cooperation

7. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Department of Justice, Criminal Division, Fraud Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 23 of this agreement.

8. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to pharmaceutical drug diversion, health care fraud, and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

   (a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas, the United States Department of Justice, Criminal Division, Fraud Section; and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

   (b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

   (c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

4

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) At the Government's specific request, Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw her plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

9. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

10. Defendant also agrees that should the conviction following Defendant's plea of guilty pursuant to this agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement

(including any counts that the United States has agreed to dismiss at sentencing pursuant to this agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution. It is the intent of this agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this agreement is signed.

11. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that she may have received from her counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

12. Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

13. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two-level downward adjustment under Section 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas and U.S. Department of Justice, Criminal Division, Fraud Section Only

14. The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant. It does not bind any other United States Attorney's Office or any other component of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and the Department of Justice, Criminal Division, Fraud Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

15. The United States reserves the right to carry out its responsibilities under guidelines

sentencing. Specifically, the United States reserves the right:

    (a)    to bring the facts of this case, including evidence in the files of the United States Department of Justice, Criminal Division, Fraud Section or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b)    to set forth or dispute sentencing factors or facts material to sentencing;

    (c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

    (e)    to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

16.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

8

17. The United States and Defendant agree to recommend to the Probation Office and the Court, based on the Factual Basis for the guilty plea in Paragraph 19, that:

    (a) Defendant's Base Offense Level is 30, as found in Section 2D1.1(c)(5). Specifically, the parties agree that the quantity of hydrocodone for which the defendant is personally accountable, including relevant conduct, yields a converted drug weight ("CDW") between 1,000kg and 3,000kg.

    (b) Pursuant to Section 3B1.3, as the owner and operator of a licensed and registered pharmacy who abused a position of trust, Defendant's Total Offense Level should be increased by two levels.

Defendant and the United States understand and agree that the United States or Defendant may assert at sentencing and recommend to the Probation Office that additional Guideline enhancements or adjustments beyond the Guidelines set forth above do or do not apply.

### Rights at Trial

18. Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

    (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf. If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court; and

    (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, she could testify on her own behalf.

9

**Factual Basis for Guilty Plea**

19.     Defendant is pleading guilty because she is in fact guilty of the charges contained in Count 1 of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From at least in or around December 2019, through at least in or around December 2022, Defendant operated a purported pharmacy practice in the Southern District of Texas—The People's Pharmacy, license number 26278, located at 8529 Gulf Freeway, Suite E, Houston, Texas. Defendant was licensed as a pharmacist by the State of Texas, license number 40294, and she maintained a DEA Registration Number for The People's Pharmacy, which enabled her to legally fill prescriptions for hydrocodone—but only pursuant to prescriptions issued by a doctor in the usual course of professional practice, for a legitimate medical purpose.

Defendant understood that under both state and federal law, she had a corresponding responsibility to ensure the prescriptions for hydrocodone she filled at The People's Pharmacy were valid. She knew and understood that it was unlawful for her to fill purported prescriptions issued outside the usual course of professional practice, without a legitimate medical purpose. And she knew and understood that it was unlawful to maintain a premises—here, the People's Pharmacy—for the purpose of unlawfully distributing hydrocodone.

It was with that awareness that Defendant used her pharmacy license and DEA Registration as paper cover for an illegal hydrocodone distribution operation. Defendant maintained The People's Pharmacy for the purpose of (1) purchasing hydrocodone and other controlled drugs with high street value from Wholesaler A and other complicit wholesalers—i.e., those willing to sell Defendant the controlled drugs, usually at substantially inflated prices, in the face

10

of numerous red flags that Defendant was unlawfully distributing and dispensing them; and (2) filling purported prescriptions for the drugs without regard for whether they were issued in the usual course of professional practice and for a legitimate medical purpose, and which in many instances she actually knew were not for any legitimate medical purpose.

Defendant operated this way because it made her a lot of money. For the popular combination of around 120 hydrocodone 10-325 mg pills and around 90 pills of the Schedule IV controlled drug carisoprodol, Defendant charged hundreds of dollars to her customers who "went to the doctor" to receive from Doctor A and other purported medical providers illegitimate hydrocodone prescriptions, issued outside the usual course of professional practice and without any legitimate medical purpose. The illegitimate prescriptions from Doctor A were cookie-cutter, usually comprised of hydrocodone, carisoprodol, and a couple of non-controlled "maintenance" drugs typically used to treat high blood pressure, high cholesterol, constipation, and the like.

Defendant required most of the individuals posing as patients to personally present her their purported prescriptions and identification before she would dispense hydrocodone to them. That did not mean Defendant thought her customers were legitimate; to the contrary, Defendant knew that she was dispensing controlled substances in an unauthorized manner, and she exercised no pharmaceutical judgment and made no effort to fulfill her corresponding responsibility to ensure the prescriptions were legitimate with that understanding.

In this way, Defendant dispensed at least approximately 31,020 pills of hydrocodone 10-325 mg, knowing that such prescriptions were unlawfully issued by Doctor A. Defendant received at least $2,000,000 as a direct result of the unlawful conduct charged in Count 1 of the Information.

## Breach of Plea Agreement

20. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

21. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

22. Defendant understands that forfeiture and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and

fines. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

23. As part of this plea agreement, Defendant agrees to the following:

    (a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation, including but not limited to the following specific assets:

- i. $178,279.21 – Athene Annuity Account #******7728
- ii. $168,795.36 – TD Ameritrade Clearing Account #***-**0621
- iii. $148,521.36 – WeBull Financial, LLC. Account #5**-***45-13
- iv. $63,158.20 – 14 Ethereum associated with CoinBase Account #*******************3af5 (the "CoinBase Account")
- v. $171,515.33 – 3.03686171 Bitcoin associated with the CoinBase Account
- vi. $5,620.84 – 119.43976011 Ethereum Classic associated with the CoinBase Account
- vii. $5,631.61 – 2,647.4 Polygon Matic associated with the CoinBase Account
- viii. $2,034.90 – 10 Litecoin associated with the CoinBase Account
- ix. $1,512.82 – CoinBase Account #*******************3af5
- x. $25,250.00 – 2018 Toyota Camry, VIN *************3973
- xi. $29,350.00 – 2019 Toyota Avalon, VIN *************7080
- xii. $44,602.00 – Smart Financial Credit Union Account #****8310
- xiii. $56,512.34 – Smart Financial Credit Union Account #****5210
- xiv. $575,702.71 – Frost Bank Account #*****4561
- xv. $118,522.43 – Frost Bank Account #*****6731
- xvi. $36,735.60 – Texas DOW Employee Credit Union Account #*****9536
- xvii. $37,961.06 – Texas DOW Employees Credit Union Account #*****9544
- xviii. $190,653.00 – US Currency found in Defendant's residence (1**** 1**** C****, P*******, Texas 7****) at time of arrest/search

13

(b) that Defendant obtained at least $2,000,000 from illegally distributing hydrocodone through The People's Pharmacy, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that Defendant agrees to the imposition of a money judgment in that amount, against which the assets set forth in Paragraph 23, Subparagraphs (a)(i) through (a)(xviii), shall be credited, in the amounts stated there;

(c) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(d) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

24. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this plea agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

25. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

26.     This written plea agreement, consisting of 18 pages, including the attached addendum of Defendant and her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

*Continued on next page...*

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __February 5__, 20__25__

_____
Defendant

Subscribed and sworn to before me on __February 5__, 20__25__

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

_____        _____
Nicholas J. Ganjei                                       Glenn S. Leon
United States Attorney                              Chief, Fraud Section
                                                                    Criminal Division
                                                                    U.S. Department of Justice

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| v. | § CRIMINAL NO. 4:24-CR-657 |
| | § § |
| OPHELIA EMEAKOROHA<br>Defendant. | § § |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant her rights with respect to the pending Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____   　　2-5-25
Attorney for Defendant　　　　　　　　　Date

*Continued on next page...*

I have consulted with my attorney and fully understand all my rights with respect to the Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____    _____
Defendant                                                           Date